Good morning. In a police court, I'm Paul Ehrlich for Henry Enterprises. I'd like to reserve three minutes for a weapon. In this case, we're asking the court to construe an Oregon statute. It's ORS 60.952. And the statute is important to many small Oregon businesses. It allows the shareholder and, of course, the corporation,  and the question presented here is whether this file is available in a derivative shareholder claim. And the answer is yes. The key to this issue is the interplay between 952 and the derivative statute, which is 60.261. And before we look at that, I want to say something very quickly about a direct shareholder claim. Direct shareholder claims are claims by a shareholder on behalf of the shareholder. And that's an uncontroversial proposition. We all agree with that. Now, if we look at 261, it says that you have to be a shareholder in order to bring a derivative claim. So a derivative claim is a claim by a shareholder on behalf of the corporation. A direct claim is a claim by the shareholder on behalf of the shareholders. They're both brought by a shareholder. And if we turn that back in to 952, it says that the remedies in 952, as it was implied already, are available in receipt by a shareholder. Since both direct and derivative claims are claims by a shareholder, they both fall directly to the ambit of 952. And that really is the key to this appeal. It really doesn't need to get much more complicated than that. Can I interrupt you for just a second? In light of the fact that there are grey dot cases before the Oregon Supreme Court, wouldn't we be safer in certifying the question of whether or not the statute can be used in a derivative action to the Oregon Supreme Court? You certainly can certify. We think that there's no need for you to do that. The statute has been contested in the legislature. It's all very clear. And that you can rule out it now. We're not just waiting for the decision in that case. Would there be reason to do that? Well, there's a couple things you can do here. One, you know, certify. This case is almost two years old already. And it's my understanding that once oral argument happens in the Oregon Supreme Court, it takes roughly a year to issue a decision. So there's a lot of delay in what happens if you certify. And it would be more expensive to our clients than it is to these clients. Sorry to be expensive to you, but we prefer that you're not. What has been happening during these two years when this appeal has been proceeding? I have a timeline here. I can go through it as well. But it took the better part of a year to go from the complaint and to the election that we did, which was very shortly after that. And then to get the trial court to certify its decision to you. Sorry, my question wasn't very precise. I'm just wondering what's been happening with this company and this family in the meantime. So I know there's a lag in when we can get arguments scheduled. So I'm just wondering, it's a pretty small company with a family involved. So what's happening here? There's a lot I could say that's outside the record. I mean, in general, this case has been very disruptive to the family. It's been very expensive. We've tried to sell it a few times. We haven't quite got there. The delay in this case was because we figured maybe we could sell it, but we took about three months. But there's no movement or something, and the company still exists, and they're just sensitive to us still? Yeah, I didn't know this company existed for, the company itself has existed for about 40 years. This family has been on this property for many generations. Well, it's still very much an ongoing concern. Do you want to say anything more about the certification or? Well, I don't know anything about that. You do, in your brief, you make some argument in support of the policy of this law. The Supreme Court would have a little more latitude maybe than we might on that score. And you argue that this is in place, the statute is in place, in order to cut down on litigation. Exactly. And, you know, I could make a case, I think, for the fact that it is not a cheap, as you pointed out, cheap process, and lends itself to a lot of litigation. Because, and there's a couple million dollars or more at stake here, at least somebody suggests. So, on that score, wouldn't certification kind of be a, give the decision-maker maybe a little more latitude than we might have? It would. The Grey Dog decision is very important here. I think they've taken the position that it's not. But the thing that's important about it is the way that the court treats the legislative history. Because the legislative history itself says that this is a preferred remedy. All the different equitable remedies that can be created are about 9-5-2. This is the one that is preferred because it does, it backs litigation down and it makes it less expensive. These post-corporations, they can be torn apart by this kind of litigation. So it's the preferred remedy. And the Grey Dog decision was, it emphasized that. So that's, you know, the Supreme Court is likely, I think, to go ahead and affirm that. It would help you, certainly, to make this decision. But like I said, you know, another option is to simply wait. And see what they do. Or to stay in this case. And then without option, you would have August, the rest of the statutes. You wouldn't have to read through the certification issues and that kind of thing. Your opposing counsel took the position and agreed that if the buyout occurred, the litigation still wouldn't be over. But I understand your position is, yes, it would be. So you seem to have a difference in how you read what would happen. Could you explain that a little bit further? Sure. So, if we go back, and we have an evaluation here, the way that that works. There's actually a declaratory judgment claim in this case. It's the 12th claim for a case. What would happen is, the trial judge would have to deal with the 12th substantive claim, or the 11th substantive claim for a case. And those would all be collapsed down into an evaluation here. All those claims go away. And what we have is a streamlined, compacted, equitable proceeding where the judge just determines fair value. It is like they don't have to take part in determining fair value. The court gets to take into consideration the allegations of the complaint. It's fair value, but also whether it would be equitable to allow the buyout, correct?  That's in 9525. So all of that occurs. It's much more of a streamlined proceeding. Then there's this deck claim out there. And that has to do with whether or not certain shares that are held in the estate and the trust of two deceased shareholders should remain in the trust in the estate, or whether they can be purchased by the company. So that's the other piece of this that would happen. Why would that not be included along with the others? Well, it's our position that on the day that we made the election, we have the right to buy out those shares that these two plaintiffs own at that time,  so if we go back for evaluation here, you post the shares that the judge is going to determine the value of under this deck claim theoretically if they were to win it. And the shares that are in the subject of that deck claim would say in the estate and the trust of those two deceased shareholders, these two plaintiffs eventually would be able to inherit some of those shares. And obtain more shares. But that would not get resolved as part of the buyout because it wouldn't happen yet? Right. I think what would have to happen is if we do the evaluation here and on the shares that you've already made this election on, the deck claim would go forward. It would be determined whether or not these two plaintiffs held additional shares then they have some options there to keep their principal shares and the principal prosperous members of the company. Or they could offer to sell them to the company and we get to settle that way. Or they could bring another claim and then we'd have to buy out those shares. So there's a number of scenarios about how that could play out. I just am a little confused about why that couldn't all be wrapped up into the evaluation now. Why couldn't this all get wrapped up at once? Um, well I think if I go back to my position is that this evaluation here and beyond the number of shares that we made the election on, which is the 5% that they currently own, and that deck claim eventually could result in these plaintiffs having new shares. But that could take, you know, quite a while to result in another evaluation here. You know on evaluation, somebody has to decide whether or not this case has any merit as it affects the value. Yes. And so it's like, almost like a malpractice case where you have to decide the merits of the underlying case to decide the merits of this and then move on to value as part of the evaluation. So somebody has to decide whether or not they win or lose this case before they can know how much the shares are worth. It is kind of a case-by-case. Yeah, it's like a malpractice case. And that's all judge work instead of jury work. Exactly. Okay. So is this any easier? I mean you said it's a streamlined procedure, but is it basically just the same procedures? Yeah. I mean if you have a full-blown litigation, you know, you're going to have discovery and distributor disputes and motion to practice and your judgment and all that stuff that requires some expense. But here you just go back to the trial judge and he's going to hear some testimony from the witnesses about what their complaints were and just wrap that into the evaluation. So I guess it's far more streamlined. Since you're getting close to the time, can you address the Seventh Amendment issue that we're up to here at 12? Yeah. So one new, the starting point of the Seventh Amendment issue is that courts have to consider statutes as being constitutional whenever they can. And that's just why it's been around forever. In fact, the trial judge, when he started back mostly with his opinion, started with a case that basically says that it says, according to the decision he has, it's when a confederate was competing with reasonable discussions of statute. And there was some internal arguments that one of them would render the statute unconstitutional and generally favor the other construction. So if there's a potential constitutional problem, we try to consider the statute before that. But then what he did here is that he went ahead and found a constitutional problem even though he didn't need to. And the right to jury trial is procedural and it has to attach to a substantive claim of some kind. And the legislature can remove the substantive claim and then the right to jury trial goes away. And that's the Jensen case that we cited in our brief that has to do with the Oregon Tort Claims Act. It's an aspect of that act where you have a history that if you had a claim against an individual state employee, you can submit an employee. And then the Oregon Tort Claims Act said, not anymore, you can't do that. The remedies against the state itself. Some plaintiffs there said that it's a settlement of immoral right and violated by that statute. And the court said, no, the legislature can eliminate a claim entirely without implicating the second amendment right. And that's what he's having here. Often in nine times with bio-remedies, the claims, the substantive claims, the defendants go away and it's just replaced with a valuation here. So the Oregon legislature completely took away these enclosed corporations. If they chose to do that, they could eliminate corporations altogether and there wouldn't longer be corporations in the Oregon state, right? Well, I suppose they could. It's a theoretical move, certainly, but I suppose it's possible. Or you would end up with these unincorporated partnerships and that kind of thing, which is what makes you see it as a common law before a corporation starts to exist. And if they had to never do that, and thought about that, and didn't know the shares, would that be a good derivative action? I think I suppose that would be correct. Yeah. Okay, thanks. Thank you. Brock, thank you. We took you through most of your time, so we'll still be coming over. Yeah, sure. Hi, please support Paranova on behalf of Kelly's Les Scallon Intakers. There's a lot here, and I think maybe what I'd like to try and do is help focus the courts, focus down, or focus the court's attention on what I think is really the critical issue in the analysis. It's something that's been discussed in the district court's opinion, but I think it's really dispositive here in answering the question of whether this particular statute applies to derivative claims, shareholder claims, or just shareholder claims. And that's the exhibit that I had given to the clerk that's been distributed to you. And what this is, this is the actual Oregon laws as adopted by the legislature. And on the second page, section 60, which you see is, was now codified as ORS 60952. So when the legislature adopted this shareholder buyout provision, they went ahead and they made some amendments to other statutes within chapter 60, and in particular included cross-references. And I think the one that's really key here in your decision is the one that was added in section 62, which is ORS 60667. It's what I've highlighted in yellow, and the language the legislature added is the bolded language you see there. And it says, in a judicial proceeding for shareholder remedies, described in section 60, which is now 952 of this 2001 act, they may appoint one or more receivers when it goes off. And the importance there is the use of the term shareholder remedies. So in a derivative suit, the claim and the remedy belong to the corporation. They do not belong to the shareholder. How do we know that that phrase, though, is meant to be exclusive so that can be true, and yet putting what you have on the second page in a proceeding by a shareholder be a broader category, and the thing you just pointed to is just part of that broader category? This is an indication of what the legislature's intent was. In Oregon, the rules of statutory construction in ORS 074-010 say that the rule of the judiciary is to not insert what's not there and not omit what is. Right, but I'm not sure you're answering. So is there something about 62 that tells us it has to be entirely coextensive with 60? It's a combination of how it is that it relates in context to 952. So in 952, the shareholder remedies are in subsection 2, and those are the remedies that are available in every proceeding brought in subsection 1. So the legislature is identifying those remedies as belonging to the shareholder, not to the corporation, and that's consistent with the legislative history that was adopted, where they say that the issue that they're trying to address is they're not creating new rights and remedies. What they were doing is codifying rights and remedies that the courts use and would regularly apply in shareholder oppression cases. There's no indication that they were now creating a buyout in a derivative proceeding claim. That is something that is found nowhere in any of the legislative history, and I think really goes beyond what's in the text and context in this case. There's a couple of questions. Can you address just, it seems to be reading the language in a proceeding by a shareholder. The natural reading of that includes derivative actions as well. So I have trouble just getting past the plain language of the primary statute. Well, I think there again you have to look at the context here. So the text and context together, you can't look at one or the other in isolation under Oregon law. And the context here is going to be other related statutes. You're going to look at the derivative proceeding statute and the derivative proceedings. It's a proceeding brought in the right of the corporation. Here this is a proceeding that the legislature has used two very different phrases. And so it understands that when it's talking about a derivative proceeding, it's one that's brought the right of the corporation. And as the district court judge discussed, the derivative proceeding is really a legal fiction. The shareholder has to bring it because the corporation and the directors who are in charge of the corporation won't bring it themselves. So it's a legal fiction that allows the claim to go forward when the leadership of the corporation says that they're not going to pursue those. So it's not a claim that belongs to the shareholders, it's a claim that belongs to the corporation. And in the legislative history it says, you know, we need to adopt this because judicial disillusion is a really harsh remedy in a shareholder repression case. Well, we haven't asked for disillusion. Any money that is recovered will go to the corporation. And it's up to the corporation to decide how to spend it. It's kind of a family business though. Isn't there not much difference between the claim on behalf of the corporation and the claim on behalf of the shareholder? Because ultimately it's just a small group of people who are sharing this money essentially. I wouldn't necessarily agree with that. And here's why. In this particular case, we raised a number of claims that were being pursued by the corporation, including claims against third-party, such as the third-party corporation that's occupying the corporation's land and has a pay grant against a corporate accountant. Those are claims truly belonging to the corporation. And any money that's recovered would go to it. In addition, this is a situation where you have one minority shareholder and one minority shareholder and the buyout basically removes the problem. There's 16 shareholders in this corporation. Five of them are named as defendants. Nine of them are parties at all to the proceeding. If you would allow this to go forward under their interpretation, what they're saying is that the corporation's claims against third-party corporations occupying its property would just evaporate. I'm not sure how that would be equitable or fair to the other shareholders. What's interesting, the answer before, it would, that would be discussed as part of the valuation of the company. So if your clients succeed in showing that there's a problem and that value has to reflect the remedies of that problem, then they figure out the valuation, right? Actually, that's not exactly what the language of the statute says, Your Honor. So in 16.952.6d, it says, after an election, a purchase has been filed by the corporation. One or more, by the corporation or one or more shareholders, the proceeding filed under subsection one of this section may not be discontinued or settled. Nor may the shareholder who filed the proceeding sell or otherwise dispose of the shareholder shares unless the court determines that it would be equitable to the corporation and the shareholders. So buying out my client's shares doesn't end the claims. The claims continue forward and can only be settled under the express language or discontinued if the court says, yeah, giving up this claim against a third-party corporation for an action for it is fair to both the corporation and fair to the other shareholders. Well, so I read this a little differently, I think. So I read it as part of the inquiry about whether the buyout to happen is, would the buyout be equitable? And part of the buyout required is finding an equitable price. So you basically kind of do it all at once. You have to figure out whether they have a real claim that the company's value is lower than it should be because of some misconduct. If it is, then maybe you value it back up when you say how much the buyout needs to be. And all of that happens at once in deciding the equities. Is that not your understanding? I think that's only half, it's not my understanding, I don't think it would necessarily work that way, and I think that's only half of the analysis. So I think, Your Honor, you're looking at would it be equitable to the plaintiffs who brought this claim? But as I said, there are nine shareholders who are not a party to the suit and will remain shareholders. Would it be equitable to those shareholders for the corporation to give up claims worth millions of dollars and then have to turn around and spend hundreds of thousands, if not millions, of dollars to buy out my clients' shares while they just walked away from over three million dollars? Well, maybe that's one of the things the judge would decide in figuring out whether it's equitable. I mean, if this proceeding happens, the judge will have to decide whether it's equitable or not, and maybe the judge will decide it's not equitable, and the litigation has to continue. And thus, it's not a quick end to a litigation. It's been proposed, and on top of it... But doesn't the legislature tell us that that inquiry should happen at least, so maybe the judge would decide it is equitable, and then they would be done? We don't know yet. I don't think we get there, Your Honor, because the harm here is to the corporation, not to the individual shareholders, and so to say that we've remedied the breach of the contract by buying out my client's shares, it's just a disconnect. It's not actually a breach of the shares. What is your client's interest other than the money they will eventually get from the company? The company has 16 people's shares in this company, so then when our clients have some interest, then why can't it be solved through money? Because, as was discussed, the family corporation owns a large amount of land. My clients have an interest in seeing that corporation continue for future generations, and I think it's important that the assets that would allow that corporation to do it be brought back in to the corporation itself. It's quite possible that my clients  get any of this money that would come back in. They own less than 6% of the shares, they can't control the board of directors, all the money can come back in and the board of directors can say, you know what, we're going to go and we're going to invest this and replant some trees on the property or doing something else. That's quite possible. It's a benefit to the corporation and to my client, and it is a     of directors. And      corporation can do certain things that they can't do. We can't do the other things that we can't do. We can do  other things that  can't    do the other things that we can't do. And we can't do the other things that we can't do.           And we can't do the other things that we can't do. We can't do the other things that we can't do. And we can't do the other things that we can't do. And  can't  the other things that we can't do. And we can't do the other things that we can't do. So we have to make sure that we can           can't do the other things that we can't do. And so we can't do the other things that we can't do.       other  that we can't do. And so we can't do the other things that we can't do. And so we can't do the       And so we have to make sure that we can't do the other things that we can't do. So I hope you guys can kind   this.      can accomplish this. And I also want to recognize that we can also accomplish this. And so we have decided that we would rather buy them out and get this over with. I'm not hearing yet why this couldn't be bought out the way the legislature seems to have anticipated. I wouldn't agree that the legislature in all the legislative history suggests that they are codifying equitable remedies. I don't think that that was contemplated by the legislature. In this particular case, remember, it would apply in this family, close-held family situation where all we've done is say, look, you used to go out and prosecute these claims. One of those is the unlawful  What that would do is effectively immunize corporations who go and make an unlawful distribution where they distribute money to themselves, protect their     unlawful to them. So, in this particular court's interpretation, the shareholder can be the one who decides whether they want to be bought out or not. If they want to be bought out, they file it as a direct action. If they don't want to be bought out, such as my clients, they file it as a derivative action. The money in the legislature in Oregon decides we don't really want to spend our core resources on any of those if they can be             as a direct action. If they don't want to be bought out, they can file it as a derivative action. If     be bought out, they  file it as a derivative action. If they don't Thank you.
judges: Leavy, Friedland, Benitez